BEFORE THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA DEL REFUGIO BALLI,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| - v. - } | Civil Action No: 1:23-cv-67 | |
| § | | |
| **AKIMA GLOBAL SERVICES, LLC,** § | | |
| § | | |
| **Defendant.** § | | |

## PLAINTIFF'S INITIAL COMPLAINT

### I. *Introduction*

1.    *Comes now*, the Plaintiff Maria Del Refugio Balli, through her undersigned counsel, to file her Complaint of discrimination alleging that the Defendant, **Akima Global Services, LLC** ("**AGS**") discriminated against the Plaintiff by allowing AGS' supervisors and managers to engage in **gender discrimination**, **retaliation** and creating a **hostile work environment** against the Plaintiff due to the fact that the Plaintiff is a Mexican-American Female who had previously engaged in protected activity; when she filed a discrimination complaint before the **Texas Workforce Commission Civil Rights Division** herein after referred to as the ("**TWC-CRD**") a state agency on **December 6, 2021**.  The facts establish that on **February 28, 2022**, AGS removed the Plaintiff from her job as an Aviation Security Officer ("ASO") working on a federal government contract for the Department of Homeland Security ("DHS").  On **December 22, 2022**, the Plaintiff filed her instant complaint of discrimination before the U.S. Equal Employment Opportunity Commission (EEOC) charging AGS with gender discrimination, retaliation and creating a hostile work environment.  (**Ex. A, attached hereto**).  On **January 30. 2023**, the EEOC issued its *Determination and Notice of Rights*.  The Plaintiff has **ninety (90)**

**days** from the date she received the EEOC's *Determination and Notice of Rights*. (Exhibit B, attached hereto). Effectively, the Plaintiff has up to and including, the Court's next business day, **Monday, May 1, 2023**, to file her instant complaint. [*See Fed.R.Civ.P.* at *Rule 6(a)(1)*]. Accordingly, the Plaintiff alleges the following:

## II. *Jurisdiction and Venue*

2. Paragraph 1 is hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

3. This Court is vested with subject matter and *in personam* jurisdiction pursuant to *Title 42 USC § 2000e-5(f)*.

4. Venue is proper before this Court due to the fact that all the Plaintiff's claims arose while she was in San Benito, Texas which is located within the Southern District of Texas, Brownsville Division.

## III. *Parties*

5. Paragraphs 1 through 4 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

6. Plaintiff Maria Del Refugio Balli is a Hispanic Mexican-American female, mailing address is PO Box 1213, San Benito, Texas 78586. Plaintiff Balli can be served with process, motions and pleadings through her undersigned Attorney Lorenzo W. Tijerina local office located at 1911 Guadalupe, San Antonio, Texas 78207, telephone number (210) 231-0112.

7. Defendant/Employer AGS is located at 13873 Park Center Road, Suite 400N, Herdon, VA 20171. The Defendant publishes that it can be served through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## IV. *Procedural History*

8.  Paragraphs 1 through 7 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

9.  On or about December 22, 2022, the Plaintiff filed an administrative complaint of discrimination before the EEOC alleging that she was discriminated and retaliated against because she is a Hispanic, Mexican American female who previously filed an employment discrimination claim against AGS before the TWC-CRD on December 6, 2021.

10. On or about January 30, 2023, the Plaintiff received the EEOC's *Determination and Notice of Rights* giving the Plaintiff the rights to sue AGS within 90 days of receipt of the notice.

## V. *Operative Facts*

11. Paragraphs 1 through 10 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

12. From or about from October 14, 2019 to February 26, 2022, (thirty months) the Plaintiff worked for AGS as an ASO at Harlingen, TX.

13. After being hired, Plaintiff was informed by her AGS supervisors and managers that the Plaintiff was expected to report fellow employees for any questionable incidents, whether or not she witnessed her fellow employees' conduct at issue.  Plaintiff was informed that she was expected to support her supervisors and managers no matter the conduct at issue.  Plaintiff was instructed to unquestionably support whatever AGS' supervisors and managers ordered.  Plaintiff was ordered to tell on coworkers. When the Plaintiff questioned the effect of being an informant for any little incident, she was told that if she did not like having to report fellow employees she would be "fired".  This posture by AGS' supervisors and managers immediately open the door to a hostile working environment between AGS' supervisors and management verses the Plaintiff.

14. On **November 8, 2021**, on a flight back to Harlingen, TX from Alexandria, Louisiana, ASO Robert Martinez and the Plaintiff were standing near the rear of the aircraft engaged in conversation with another ASO, a couple of rows away from where flight attendant ("**FA**") Claudia and ASO Diaz were also conversing. The lights were off and mostly everyone aboard was asleep including the DHS' Field Officer In-Charge ("**FOIC**"). The chime for the seatbelts had just been turned on. Without much allotted time, possibly 10 seconds, The Plaintiff heard a FA over the intercom tell ASOs Martinez and Plaintiff to sit down. Whereby, the Plaintiff and ASO Martinez walked to their seats and sat down. No one made any other contact or addressed ASO Martinez or the Plaintiff over the intercom. Since FA Claudia was already at the rear of the plane and was the rear FA for the entire mission, no other FA did a compliance check. However, lies were created by FA Erica..."that the FAs had to tell Martinez and the Plaintiff several times to sit down." FA Erica lied that "…she had to walk up to the Plaintiff and Martinez and order them to sit down…" This did not happen.

15. On **November 15, 2021**, Plaintiff was scheduled to work a mission from Harlingen, TX to El Paso, TX to pick up detainees to be dropped off in Houston, TX for an ICE Air Operation. Ms. Alma Cepeda one of Classic Air's representatives from (Harlingen, TX) was on board. At the end of the mission, Ms. Cepeda advised **Lead Aviation Security Officer** (LASO) Ramon Rodela to address AGS' ASOs at the debriefing about sitting down when the seat belt chime sounds, that an indicator illuminated and that all had gone well. To everyone's surprise, Rodela reported to Mario Benavides (Classic Air Representative) that "…not all went well." It was then that the Plaintiff received a call from her supervisor and site manager Rachid Alcala. He explained to the Plaintiff that she had been reported for not sitting down when the seat belt light was turned on and for being too loud and laughing. Plaintiff informed Alcala that the flight from

El Paso to Houston is short and there was only time to work and nothing else. Also, that the flight was empty on its way to El Paso from Harlingen and from Houston to Harlingen and that Alcala sat in front of the Plaintiff due to the fact that her post duties for that day were the front cabin/Cockpit. The Plaintiff proceeded to explain to Alcala that there was a 20 minute descend. The Plaintiff further explained to Alcala that at the first chime of the seat belt sign the crew is required to take a seat. At the remaining 10 minutes, there is a second chime and this is when the ASO escort the FAs to the rear of the plane. Plaintiff informed Alcala that on this particular flight the chimes were back-to-back without any time except to go straight to one's seat and "…that is when we were reported." The Plaintiff stated to Alcala that; "It's not like we stood for 20 seconds or even 5 seconds. The chimes rang back-to-back, and we sat down." The Plaintiff informed Alcala "…that this is what happened…nothing more nothing less." The Plaintiff explained that "…it was not right for the flights attendants to be allowed to lie." And, "…if they are just going to be looking at me to report me, I felt targeted because other officers were standing and how come their names did not get mentioned." Alcala agreed that "…it seemed as if [Plaintiff] was not liked and was being targeted." The Plaintiff informed Alcala that the wife of the **FOIC** suspended the Plaintiff twice without any written disciplinary action concerning a mistake that many others have made and they were not suspended. Nevertheless, the Plaintiff was suspended. Again, the Plaintiff stated that she is being singled out and held to a higher standard while other ASOs suffer no suspensions. Now, again, the **FOIC's** wife is only reporting the Plaintiff. The Plaintiff told Alcala that the **FOIC's** wife was intentionally targeting the Plaintiff.

16. On **November 17, 2021**, **Immigration and Customs Enforcement** (ICE) supervisor Leon Lopez addressed ASO's at a debriefing after completing an international mission. Mr.

5

Lopez advised ASO to report FAs when they do not do their job.  The ASOs asked for clarification because they do not know the FAs' job descriptions nor were they hired to oversee any of the FAs' duties.  ASO Raul Martinez concurred and explained that this reporting back and forth was creating hostility between the ASOs and the FAs.  That we, "… work together daily and that Leon Lopez is allowing and creating conflict to create a hostile workplace environment."  At this time, Mr. Lopez said. "Whatever report I get, I must back it up because it came to me first and I need to take care of the problem."  Plaintiff asked, "What about the truth and about getting both sides and not just one side of the story."  ASO Oliveira then asked, "... So you do not have our backs?"  Lopez replied, "No".  Oliveira then said, "... Ok, then I see where you stand."  At this point, "We were told to report the FAs before they report us."  Lopez then informed the ASOs that the compliance checks where the FAs are required to walk or be escorted to the back of the aircraft was not being done with any consistency as required.

17. On **November 22, 2021**, FA Nisa was being escorted to the back of the aircraft by ASOs Garza and Munoz while doing a compliance check prior to a departure from Indiana.  FA Nisa told ASO Munoz to address the Plaintiff about her backseat being slightly reclined.  Without hesitation, the Plaintiff adjusted her seat to the upright position.  Upon returning to the front of the aircraft FA Nisa directly addressed ASO Martinez about his backseat being reclined.  Without hesitation, ASO Martinez adjusted his seat to the upright position.  During the flight, the FAs and both FOICs Govea and Mardar, LASO Rodela and ASO Emmanuel Pizana discussed what occurred at the cockpit.  Rodela explained to the ASOs that he was getting different versions from the FAs and it was apparent they were lying.  The FAs said that the ASOs were noncompliant but offered no proof.  Effectively, all the ASOs did as they were instructed.  At the end of the day, the Plaintiff received a "heated call" from Alcala.  He was clearly upset and

alleged that whatever the Plaintiff had done was wrong.  The Plaintiff replied that Alcala should ask the Plaintiff "…what happened and allow her the opportunity to explain before assuming what he was told was true."  Plaintiff informed Alcala that the Plaintiff was tired of the harassment, toxicity, and conflict at the workplace.  Plaintiff told Alcala that she (Plaintiff) was being targeted.  Alcala asked the Plaintiff, "…if she felt targeted to let him [Alcala] know so he could report it and that he had already asked FOIC Cepeda if he had anything against the Plaintiff and Cepeda responded "No".  Plaintiff asked Alcala, "…and you really think he [Cepeda] would tell you [Alcala] yes or the truth?"  Plaintiff further said, "… I highly doubt it."  Plaintiff told Alcala that, "The allegations are lies and how coincidental that the two ASOs who elected not to take the COVID immunization were now being targeted and "reported".  The Plaintiff was one of the ASOs who elected not to receive the COVID immunization.

18. On **November 23, 2021**, Alcala called the Plaintiff and told her that he (Alcala) was sending an updated schedule and he was removing the Plaintiff from the schedule starting the following day due to a pending investigation for what had occurred.  This same week ASO Garza spoke to Alcala and asked why she (Garza) was not asked to provide a statement since she was involved and witnessed what had occurred.  Alcala said he did not know ASO Garza was a witness.  LASO Rodela then showed Garza the text message where he posted the names involved and Garza's name was cited.  The record establishes that the Plaintiff's supervisor failed to get a sufficient amount of statements from all who were involved to support how the events happened or to dispute the allegations against the Plaintiff.

19. **December 6, 2021**, the Plaintiff filed a claim of discrimination before the TWC-CRD against AGS grounded on her being discriminated against and being summarily removed from her position as an ASO on **November 24, 2021**.

20.     On **February 28, 2022**, the Plaintiff was formally removed from her job with AGS. The Plaintiff believes she was removed from AGS due to her female gender and the hostile work environment created by AGS' supervisors and managers, the Plaintiff's claims of discrimination are that AGS' through its supervisors and managers engaged in retaliation, gender discrimination and intentionally created a hostile work environment against the Plaintiff.

### VI. *Claims of Discrimination*

21.     Paragraphs 1 through 20 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

### a. Gender Discrimination

22.     The Plaintiff alleges that she was removed from her employment by AGS due to her female ***gender*** in violation of *Title VII of the Civil Rights Act of 1964* (Title VII), codified at *Title 42 USC § 2000e et seq.* No other female ASO or flight attendant was removed from employment by AGS as was the Plaintiff. The Plaintiff was replaced by a male ASO.

### b. Retaliation

23.     The record establishes that on **December 6, 2021**, the Plaintiff filed a discrimination complaint against the AGS before the TWC-CRD. Subsequently, on February 28, 2022, the Plaintiff was removed from her employment by AGS. The record provides that a link exists between the Plaintiff's removal and her engagement in protected activity.

### c. Hostile Work Environment

24.     The Equal Employment Opportunity laws prohibit punishing employees for asserting their rights to be free from employment discrimination including creating a hostile work environment. The facts support that the Plaintiff engaged in protected activity when she filed a discrimination complaint before the TWC-CRD on December 6, 2021 against AGS. The facts

support that the Plaintiff communicated with a AGS' supervisors or managers about employment discrimination, including harassment. The Plaintiff informed her supervisors and managers that she was being singled out. The record also supports that the AGS' managers and supervisors failed to investigate the Plaintiff's claims of a hostile work environment. Instead of engaging in a complete investigation of the Plaintiff's allegations of targeting or being singled out, AGS instead removed the Plaintiff.

## VII. *Demand for Jury Trial*

25. Paragraphs 1 through 24 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretation of the following allegation(s):

26. The Plaintiff respectfully requests a jury trial.

## VIII. *Remedies*

27. Paragraphs 1 through 26 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretation of the following allegation(s):

    a. Three hundred thousand dollars ($300,000.00) for compensatory, emotional and physical distress;

    b. any and all equitable damages including back pay, front pay and any other compensatory damages;

    c. punitive damages;

    d. attorney's fees; and,

    e. any and all remedies at law and in equity found to be just and owing.

Respectfully submitted,

/s/Lorenzo W. Tijerina _____
Lorenzo W. Tijerina, Attorney for
Plaintiff Maria D. Balli
Local Address: 1911 Guadalupe

San Antonio, Texas 78207
Telephone No. (210) 231-0112
Facsimile No. (210) 212-7215
Email Address: tasesq@msn.com