Case 1:23-cv-00067   Document 14   Filed on 09/12/23 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
September 12, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA DEL REFUGIO BALLI, § | | |
| Plaintiff § | | |
| § | | |
| v. § | | Civil Action No. 1:23-cv-67 |
| § | | |
| AKIMA GLOBAL SERVICES, LLC, § | | |
| Defendant § | | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Defendant Akima Global Services, LLC's ("AGS") "Motion to Dismiss and Incorporated Memorandum in Support" (hereinafter, AGS's "Motion" or "Motion to Dismiss"). Dkt. No. 5. For the reasons provided below, it is recommended that the Court: (1) **GRANT** AGS's Motion; (2) **DISMISS WITH PREJUDICE** Plaintiff Maria Del Refugio Balli's claims; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

### I.    BACKGROUND

Balli joined AGS in October 2019 and worked as an Aviation Security Officer on a government contract. Dkt. No. 1 at 1, 3. AGS is a wholly owned subsidiary of Akima, LLC, which is a wholly owned subsidiary of NANA Regional Corporation, an Alaska Native Corporation.[1] Dkt. Nos. 5 at 2, 5-2 at 2, 5-3 at 2, 5-4 at 2. In February 2022, AGS removed Balli from her employment position. Dkt. No. 1 at 1. In December 2022, Balli filed a

---

[1] The Court notes that according to reports filed by AGS from the Alaska Department of Commerce, Community, and Economic Development, AGS is a wholly owned subsidiary of Akima, LLC, and Akima, LLC is a wholly owned subsidiary of NANA Development Corporation. Dkt. Nos. 5-2 at 2, 5-3 at 2, 5-4 at 2. NANA Development Corporation may be a wholly owned subsidiary of NANA Regional Corporation, but AGS did not file a similar report linking the two corporations. Nevertheless, it is uncontested that AGS is a wholly owned subsidiary of Akima, LLC, which is a wholly owned subsidiary of NANA Regional Corporation. The Court takes that fact as true.

discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging that AGS subjected her to gender discrimination and retaliation and created a hostile work environment. *Id.* On January 30, 2023, the EEOC issued its "Determination and Notice of Rights," dismissing Balli's charge "because it lack[ed] jurisdiction over the matter as the employer is a private membership club or tribal entity." Dkt. No. 1-1 at 7.

On May 1, 2023, Plaintiff filed her Complaint in the instant action alleging that AGS discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. No 1 at 1; s*ee* 42 U.S.C. §§ 2000e–2000e-17. Specifically, she contends that AGS "allow[ed] [its] supervisors and managers to engage in gender discrimination[] [and] retaliation" and "create[ed] a hostile work environment against" Plaintiff on the basis that she "is a Mexican-American [f]emale who had previously engaged in protected activity; when she filed a discrimination complaint before the Texas Workforce Commission Civil Rights Division." Dkt. No. 1 at 1.

On June 9, 2023, AGS moved to dismiss Balli's complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5. AGS asserts that, under the Alaska Native Claims Settlement Act, it is excluded from the definition of "employer" under Title VII because it is an Alaska Native Corporation or an affiliate thereof. *See id.* at 3–5; 43 U.S.C. § 1626(g). On June 30, 2023, Balli responded to AGS's Motion to Dismiss. Dkt. No. 8. In her response, Balli agrees that "[a]s a Native American sovereign entity, AGS is exempted from . . . Title VII." *Id.* at 5. She argues, however, that AGS "waived its sovereign immunity" from suit by: (1) advertising on its website that it is an equal employment opportunity employer; and (2) entering into a collective bargaining agreement ("CBA") with the Security Police and Fire Professionals of America union, which includes an anti-

discrimination clause and an arbitration provision to resolve grievances arising under the CBA. Dkt. Nos. 8 at 5, 8-1 at 7, 21–22.

On July 6, 2023, AGS replied asserting that Balli "misconstrues the basis for AGS's motion to dismiss." Dkt. No. 9 at 2. AGS states that "it does not raise sovereign immunity as grounds for dismissal," but instead seeks dismissal "because [Title VII] does not apply." *Id.* AGS also highlights that Balli has not elaborated as to "why AGS's entry into [the CBA] with a union would waive anything as to a separate, private lawsuit by a former employee." *Id.* at 3 n.1.

Balli filed a surreply on July 11, 2023, reiterating her argument that by entering into a CBA containing an arbitration provision, AGS waived its immunity from suit under Title VII. Dkt. No. 11. AGS's Motion is now ripe for consideration. *See* Dkt. No. 5.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing a 12(b)(6) motion, the Court limits its review to the face of the pleadings, including any attachments. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996,

1004 (5th Cir. 2023) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). "The central issue" when reviewing a 12(b)(6) motion, "is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (cleaned up).

B.   **Title VII's Definition of "Employer"**

Title VII makes it unlawful "for an employer" to discriminate against an employee or potential hire "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It also makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII]." *Id.* § 2000e-3(a). An "employer" under Title VII means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Id.* § 2000e(b).[2]

Under the Alaska Native Claims Settlement Act, an "[Alaska] Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity" are "excluded" from Title VII's definition of "employer." 43 U.S.C. § 1626(g). That is, Title VII does not apply to these entities.

---

[2] Title VII defines a "person" as, *inter alia*, "one or more individuals, . . . labor unions, partnerships, associations, [or] corporations." 42 U.S.C. § 2000e(a).

### III.   DISCUSSION

The questions presented here are whether AGS is excluded as an employer under Title VII and, if so, whether Balli may nonetheless sue AGS under Title VII on a theory that AGS waived its sovereign immunity from suit.

### A.   AGS is Excluded from the Definition of an "Employer" Under Title VII

It is uncontested that AGS is a wholly owned subsidiary of Akima, LLC, which is a wholly owned subsidiary of NANA Regional Corporation, an Alaska Native Corporation. In fact, Balli agrees that AGS is excluded as an employer under Title VII. Dkt. No. 8 at 5 ("As a Native American sovereign entity, AGS is exempt from . . . Title VII . . . ."). And, AGS filed reports from the Alaska Department of Commerce, Community, and Economic Development supporting that conclusion. *See* Dkt. Nos. 5, 5-2, 5-3, 5-4; *see also* 43 U.S.C. § 1626(g) (excluding as employers under Title VII an "[Alaska] Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity"); *cf. Affiliate*, *Black's Law Dictionary* (11th ed. 2019) (defining "affiliate" as "A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation").

Additionally, AGS cites relevant authority in which courts have held under § 1626(g) that subsidiaries and affiliates of Alaska Native Corporations are excluded as employers under Title VII. *See e.g.*, *Daniels v. Chugach Gov't Servs., Inc.*, 149 F. Supp. 3d 183, 190 (D.D.C. 2016) (Sullivan, J.) (granting defendant's motion to dismiss because "[i]n support of its [m]otion, Chugach submitted to the Court its 2011 and 2013 Biennial Reports, which confirm that ANC Chugach Alaska Corporation," an Alaska Native

Corporation, "owned 100 percent of Chugach from 2009 to 2012, the period relevant to [t]his matter"); *Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1096 (S.D. Cal. 2018) (Curiel, J.) (granting the same because, according to plaintiff's first amended complaint, the entities sued were both wholly owned subsidiaries of an Alaska Native Corporation); *Pratt v. Chenega Integrated Sys.*, No. C 07-01573 JSW, 2007 WL 2177335, at *1 (N.D. Cal. July 27, 2007) (White, J.) (granting the same because an Alaska Native Corporation owned 51% of the defendant corporation).

It is uncontested that AGS is excluded from Title VII's definition of "employer." And, AGS provided documentation and cited relevant case law to further support that conclusion.[3] *See* 43 U.S.C. § 1626(g). For these reasons, the Court finds that AGS is excluded as an employer under Title VII. Because Balli only raises claims under Title VII,

---

[3] In inspecting the parties' legal citations, the Court encountered case law, uncited by the parties here, distinguishing Alaska Native Corporations' ownership interests in direct subsidiaries from those in indirect subsidiaries. *See, e.g.*, *Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC*, No. 1:17-CV-2000, 2019 WL 1493342, at *5 (M.D. Pa. Mar. 31, 2019) (Kane, J.); *Naigan v. Nana Servs., LLC*, No. 12-cv-2648 BAS (NLS), 2015 WL 300368 (S.D. Cal. Jan. 22, 2015) (Bashant, J.); *Herndon v. Alutiiq Educ. & Training, LLC*, No. 2:16CV72, 2016 WL 9450428, at *3 (E.D. Va. Aug. 15, 2016) (Allen, J.); *Fox v. Portico Reality Servs. Off.*, 739 F. Supp. 2d 912, 918 (E.D. Va. 2010) (Ellis, J.). These cases stand for the proposition that indirect subsidiaries of Alaska Native Corporations, like AGS here, are not excluded from Title VII's definition of "employer." The Court acknowledges the existence of this body of case law for the sake of thoroughness but does not further analyze or apply it for three reasons.

First, the Court need not adopt the reasoning in these cases, as the cases are mere persuasive authority. *See Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) ("[A]uthority from one circuit of the United States Court of Appeals is not binding upon another circuit.") (citing *United States v. Diamond*, 430 F.2d 688, 692 (5th Cir. 1970)). To the Court's knowledge, there is no binding authority in the Fifth Circuit construing 43 U.S.C. § 1626(g) to exclude indirect subsidiaries of Alaska Native Corporations. Second, Balli does not argue that AGS is excluded from Title VII (indeed she asserts that AGS is excluded) and cites no authority supporting a contrary finding. Third and relatedly, our adversary system "rel[ies] on the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "It is not [the Court's] usual practice to craft arguments for the parties or to conjure legal theories no litigant or jurist has raised." *Langley v. Prince*, 890 F.3d 504, 530 (5th Cir. 2018), *on reh'g en banc*, 926 F.3d 145 (5th Cir. 2019). Balli does argue against the dismissal of her claims, but, as analyzed in § III(B), *infra*, she does not do so based on a proposed construction of the Alaska Native Claims Settlement Act.

The documentation and authority AGS filed here supports a finding that it is excluded as an employer under Title VII, and Balli agrees with that assessment.

she has not stated a claim for which she is entitled to relief. *See* Dkt. No. 1. Thus, as further discussed below, her Title VII discrimination claims against AGS should be dismissed. *See* Fed. R. Civ. P. 12(b)(6); *Hughes*, 278 F.3d at 420.

## B. AGS Did Not Waive Its Exclusion from Title VII's Definition of "Employer"

Although she asserts that AGS is usually excluded from Title VII, Balli contends that AGS can nonetheless be sued under Title VII because AGS waived its sovereign immunity from lawsuits under the statute. Dkt. Nos. 8 at 5, 8-1 at 7, 21–22. Balli claims such waiver occurred when AGS entered into a CBA containing an arbitration provision and maintaining a statement on its website that it is an equal employment opportunity employer. *Id.* Balli's argument lacks merit.

AGS neither argues that Balli's suit is barred by sovereign immunity nor that it is an entity protected by sovereign immunity. Indeed, one of the cases AGS cites in support of its argument that it is exempt from suit under Title VII explicitly concludes that Alaska Native Corporations, unlike Alaska Native tribes, are not entitled to sovereign immunity. *See Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 213 (4th Cir. 2007) (concluding that a claim under 42 U.S.C. § 1981 was cognizable against an Alaska Native Corporation because: (1) "[w]hile the sovereign immunity of Indian tribes is a necessary corollary to Indian sovereignty and self-governance, Alaska Native Corporations and their subsidiaries are not comparable sovereign entities"; and (2) § 1981 has no analog to the Alaska Native Claims Settlement Act's exclusion of Alaska Native Corporations as employers under Title VII); *see also Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232, 1240 (D. Alaska 2019) (Gleason, J.) ("While Alaska Native

Corporations are owned and managed by Alaska Natives, they are distinct legal entities from Alaska Native tribes. As the *Aleman* court recognized, the question whether sovereign immunity shields a tribe from liability is distinct from the question whether ownership of . . . corporations by Alaska Natives and their devisees . . . entitles those corporations to immunity from suits." (cleaned up)). Even assuming, then, that AGS is protected from suit by sovereign immunity and waived it here, that does not resolve the separate issue of whether it can then be sued under a statute from which is it excluded. Critically, Balli cites no authority to support that theory. Indeed, she does not explicitly argue that AGS waived its Title VII exclusion (rather than simply its alleged sovereign immunity from suit). To the extent that Balli's argument can be so construed, the Court finds that argument also lacks merit.

Although this issue has not been addressed in Texas, federal courts facing similar or identical arguments to Balli's here have held that an institution's exclusion from Title VII cannot be waived. In *Little v. Wuerl*, for example, the Third Circuit concluded as much in the context of a religious school's statutory exemption from Title VII. *See* 929 F.2d 944, 951 (3d Cir. 1991). The circuit court noted that Title VII's religious "exemptions reflect a decision by Congress that the government interest in eliminating religious discrimination by religious organizations is outweighed by the rights of those organizations to be free from government intervention." *Id.* It concluded, "Once Congress stated that '[t]his title shall not apply' to religiously-motivated employment decisions by religious organizations, no act by [the parties] could expand the statute's scope." *Id.* Accordingly, the court affirmed summary judgment in the school's favor. *Id.*; *see also Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000) ("Hall contends that even if the College is a religious educational institution, it waived the Title VII exemption for such

institutions because it represented itself as being an equal opportunity employer and because it received federal funds. However, the statutory exemptions from religious discrimination claims under Title VII cannot be waived by either party."); *Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1039 (N.D. Iowa 2006) (Bennett, J.) ("The inability of either party to waive the 'religious organization' exemption applies here . . . ."); *Siegel v. Truett-McConnell Coll., Inc.*, 13 F. Supp. 2d 1335, 1345 (N.D. Ga. 1994) (O'Kelley, J.) (noting that plaintiff's argument that defendant waived its Title VII religious exemption "incorrectly views the exemptions to Title VII as something that the parties can waive").

In *Pratt v. Chenega Integrated Systems*, plaintiff argued that even if defendant—an Alaska Native Corporation—was exempt from Title VII, it waived the exemption "because its employee handbook contains an 'Equal Employment Opportunity Statement' pledging its commitment to equality in the workplace and adherence to 'applicable' employment anti-discrimination laws." 2007 WL 2177335, at *3. Citing *Hall*, the court acknowledged that "[defendant] is not a religious organization." *Id.* Nonetheless, it recognized that "as an [Alaska Native Corporation, defendant] is a member of another group Congress has specially recognized with Title VII immunity." *Id.* at 4. Consequently, the court concluded that "Congress clearly intended to exempt [defendant] and other [Alaska Native Corporations] from the definition of 'employer' under Title VII," and "a party thus designated cannot waive a statutory exception or create subject matter jurisdiction." *Id.* Accordingly, the court granted defendant's motion to dismiss. *Id.*; *see also Montella v. Chugachmiut*, 283 F. Supp. 3d 774, 779 n.20 (D. Alaska 2017) (Sedwick, J.) (citing *Pratt* with approval).

Similarly, in *Abikar v. Bristol Bay Native Corp.*, plaintiffs asserted that

defendants—an Alaska Native Corporation and its subsidiaries—waived their Title VII exclusions by entering a contract with the United State Department of Defense that had a nondiscrimination provision mirroring Title VII's. 300 F. Supp. 3d at 1099. The court rejected plaintiffs' argument as follows:

> Parties cannot amend a statutory provision via contract. They can, of course, agree on terms in a contract paralleling the requirements and prohibitions of a statute. But even if Defendants' contract with the federal government commits Defendants to a nondiscrimination policy mirroring Title VII, Plaintiffs would not be able to seek legal redress *through* Title VII; instead, Plaintiffs would have to rely on a different source of law for their claims. Because [plaintiff's first amended complaint] clearly and exclusively invokes Title VII as the source of law under which Plaintiffs sue for Counts One, Two, Three, Five, and Six, those claims must be dismissed.

*Id.* (internal citation omitted).

Here, the Court finds that AGS is excluded from Title VII's definition of "employer." 43 U.S.C. § 1626(g). AGS did not waive its exclusion by considering itself an equal employment opportunity employer and entering into a CBA—with no indication of its relevance to this case—containing an arbitration provision. *See Abikar*, 300 F. Supp. 3d at 1099; *see also Pratt,* 2007 WL 2177335, at *3; *Little,* 929 F.2d at 951; *Hall*, 215 F.3d at 625. As Balli raises claims only under Title VII (*see* Dkt. No. 1), her claims must be dismissed.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** AGS's Motion to Dismiss; (2) **DISMISS WITH PREJUDICE** Balli's claims; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## IV. NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **12th** day of **September, 2023**, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**